Jacobs. First of all, let me thank you, Your Honors, for granting oral argument in this case. This is the second time that I've been granted oral argument in this very case, and we do appreciate it. And I'm going to try to make my argument brief. The big argument that we have is we're seeking reversal of an award of attorney's fees under the Lanham Act, because under the particular decision of the trial court level, the Lanham Act would have to be expanded in order for the attorney's fees to stand. This case involves two non-profit corporations who support candidates for political office. We're not commercial ventures. The alliance has existed since 1967, and the coalition has existed since 1982. Neither organizations are commercial. In 2008, the alliance filed a suit against coalition over its wordmark and logo. The coalition prevailed on the issue of jurisdiction, and the alliance did nothing until 2017 when it filed a lawsuit in federal court to take away the coalition's name and mark. We had no notice at that time of any letter of a cease and desist from the alliance for good government, only a lawsuit. Prior to that, the court decided this case on summary judgment four months after it was filed, and the trial judge took away our wordmark and our name. After that decision was issued, the defendants moved for attorney's fees, and over $68,000 was granted in attorney's fees against a non-profit corporation coalition for better government. Despite the fact that the coalition offered nine exhibits, which included 146 pages in opposition to summary judgment, and hired an expert to show wide use of the alliance's name and mark, the trial judge granted the alliance's motion for summary judgment, taking away both the name and the mark, and our name was Coalition for Better Government, and our mark is an eagle. And I'm looking at this wonderful courtroom, and I see eagles all around here. That's a United States bird. A lot of people have an eagle. After that decision, without a hearing, the trial court granted the alliance $68,000 in attorney's fees, and we submit that the court abused its discretion in taking away the coalition's name and wordmark, and then awarding attorney's fees. The Fifth Circuit Court of Appeals modified the trial court's judgment by giving the coalition back its name several months ago, but they did take away our mark, which was the eagle. This does make the coalition a prevailing party for successfully defending its trade name. We got our trade name back, but we're unable to come out with any ballot because we have $68,000 judgment and attorney's fees on our back at this time. It should be noted that the alliance filed for its trademark in 2012, and the coalition filed for its federal trademark after that. And when the alliance filed for its trademark, they denied that it knew of anyone infringing on its name, despite the fact that they actually sued the coalition in 2008, and that lawsuit was still pending in 2012 when they filed for their federal... What's your argument to us? You're saying that the district court abused its discretion in making either of the two disjunctive findings that would support attorney's fees? Yes, sir. And it abused its discretion. Does that in any way tie to the statement you made at the beginning, which is that you're involved in political speech and not commerce? That's correct, Your Honor. But we're bound by the panel's decision saying that those arguments weren't preserved to the district court. Well, I understand that, but that's not the only argument that we have. Okay. That's exactly why I asked the question the way I did. If that's... If you're bound by that, that cannot be an argument you're making. Right. I understand that. So what is the argument you're making? Under the existing law, under the Lanham Act, for attorney's fees, we don't fit into any of that categories. In the Octane Fitness case, in Baker v. DeSloan, and for Root Systems, it was the plaintiff, the party who was litigating, who was liable for attorney's fees. And those cases can also be distinguished generally on the grounds that in all those cases, the plaintiff was found to be merely a party seeking a competitive advantage by filing a meritless claim, as opposed to the defendant, like the coalition, who did not And we've given the court timelines this morning when we came here. First is the timeline on the lawsuit, or rather, on the coalition for better government. Then we gave the court this morning the coalition's defenses, as was stated in its answer. There was 13 affirmative defenses. And then third, we gave the court material issues of fact, as stated in the answer to the complaint, which we contend would have actually been tried if the motion for summary judgment has not been granted. And I give the court all of that because it shows that because we were the parties being sued, we had an obligation to go in and defend ourselves. We had an obligation to go in and actually defend this particular lawsuit. In Vitals v. Pharmaceuticals, the plaintiff lost in the lawsuit and was ordered to pay attorney's fees for filing a suit based contrary on the established law. In Octane Fitness, it was actually Icon who initiated the litigation by suing Octane Fitness, alleging that Octane infringed a part of patent that Icon possessed. Icon sued for the patent. However, the evidence showed that Icon neither commercially sold the machine, and that was disclosed in the patent. The court found- The fact that you were a defendant doesn't accept you from the statutory language. It just turns on who prevailed. Well, but we also, we prevailed on a- So that's what I thought your argument today would be. It is in your reply brief, which is understandable because the case comes down- Yes, sir. I'm not a trademark lawyer, so please excuse me. No, I'm just, we've got the intervening decision. To me, the issue before us now is because the Lanham Act was modified. Right. Does that mean there has to be a reapportionment of the fees? Because it may, they, Judge Barbier may not have abused his discretion saying that your case on the logo was not at all strong and was pushed unreasonably. But now there's a reduction, at least as to time spent on the name. Right. Well, that- What do you think about my- That isn't all an alternate argument that we've made, but we submit that, because we are also the prevailing party on the name, that attorney's fees should not have been given. And particularly, we say that attorney's fees should not have been given because we didn't engage in egregious conduct. The only thing we did was to defend ourselves. And in all of the cases, there's like six cases that we cited in our brief, which I'm not going to bore you to go over those, but unless you want me to. But in all of those cases, it was egregious, it was almost fraud in all of those cases. We're certainly, all we are is a political organization who wants to make the state better. We don't take any contributions from any candidate. We have 38 members, and we try to make Louisiana better. We have a lot of problems here, Judge Higginbottom, in Louisiana, so that's important to do it, but we're non-profit. We've never been a commercial venture. We sometimes put out a ballot when we can afford to do it based on small contributions from different people. It runs maybe $1,500, and to let that $68,000 judgment stand against our non-profit corporation, we're out of business. Since this lawsuit came out, we haven't been able to participate in any elections at all. And Louisiana has many problems now, so we need to do it. We're a hardworking group. You can go on the internet, you can check us out, that we work, and we work for free. In the instant case, the Fifth Circuit obviously found that coalition had a meritorious defense of its name. It ruled that we could keep our name, but said that the word mark, which was the eagle, should be changed. So we accept that. I don't necessarily agree with that, because if we would have tried the case, you would see that 168 people, political organizations, use the eagle in other states. But we didn't get a chance to try the case, because it was decided on summary judgment before Judge Barbier, and he didn't want to hear anything. So we got stuck with $68,000. There's no evidence against a defended coalition in this case. Coalition did not have an improper motive for filing a lawsuit. We didn't file a lawsuit. Alliance did. Coalition's a non-profit corporation. It merely defended itself from the suit, which was brought against it, among other things. It should be noticed that the Alliance did not conduct any surveys, nor did it present any independent evidence of confusion at the summary judgment hearing. In fact, a trial judge found that in his reasons for judgment. There was no evidence at all of confusion. There's no, and also, there was no evidence of damages, and no accounting has ever been done by the Alliance for Good Government. There's no proof of monetary damages by the Alliance. It was even offered by the trial court. And after the judgment was given, when they actually said that they were not going to go for damages, they went and asked the judge for attorney's fees, and he grants them $68,000 of attorney's fees. I don't think that's fair. There was one other thing that I wanted to mention. The other thing is, Coalition and Alliance are not competitors in the local political landscape. They're participants in the political process, and we don't compete with anybody, and we don't have any money to compete with anybody. And we want to keep it that way, because I think that's the way politics should be. Now- The standard of review you accept, it is not de novo, it is abusive discretion. Do you accept that or not? Yes, sir, I do accept that. There's one other thing that I want to mention. The improperly referred to me, regarding an automobile accident, very serious automobile accident that I was involved in in 2011, and in that particular automobile accident, that record was sealed by the civil district court because it contained my financial records. Somehow, opposing counsel got a hold of that, and he put it in his brief, and Judge Barbier copied that for whatever the reason is, saying that I was a lawyer who made millions of dollars on personal injury cases, and going into the fact that I've made millions of dollars on real estate, etc. That's got nothing to do with this case. I mean, if he wants to bring up something about me as a lawyer, I'm an AB rated lawyer in three states. I've been practicing for 49 years. I want to make another year, and I had very serious injuries in that automobile accident. In fact, the Fourth Circuit Court of Appeal set the jury decision aside because of the fact that the defendants in that case made very bad statements to the jury. So, if there's any way you can get that out of an opinion, I'll live alone. I don't want anybody to know what my financial matters are. I don't advertise that. It's got nothing to do with the case. If you can get that out of the decision, which was printed in the Times-Picayune, because counsel went and called the Times-Picayune to get information on that, I would really appreciate it. New Orleans is a dangerous city, and I live in the French Quarter, and you know what's happening in the French Quarter. I don't even have to tell you that. That hits the internet. It hits all over. You need to stick to the issues that are on appeal. Yes, sir. But that is one of the issues. We printed that in the brief. If you can get that out, I would greatly appreciate that. Unless you have some questions, I believe that's my argument. I could go over all the cases. You can take that for rebuttal. Thank you. Yes, sir. Thank you, Your Honor. And thanks once again for bringing it all forward. All right. I'm going to let you pronounce your name, because I'm bound to mess it up, so. Good morning, Your Honors. Richard Syuk. Syuk, I never would have done that. On behalf of Alliance for Good Government. I'd first just like to just address the last thing that Ms. Jacobs mentioned. I did not obtain any confidential information. I merely quoted an opinion of the Fourth Circuit court of the state of Louisiana. That's all I did. It was public record because of that opinion. As you all mentioned, the standard here is abuse of discretion. So the issue is whether the district court abused its discretion in determining that this was an exceptional case and then awarding the fees that it did. It was mentioned while Ms. Jacobs was speaking that there possibly should be a reduction in the amount of fees that were awarded because the injunction was modified. The reason that should not be the case is because this case was driven by the fact that coalition would not stop using the logo that the Fifth Circuit and the district court both found the coalition to have intentionally copied from Alliance. Had the coalition litigated this case in a reasonable manner, there probably wouldn't have been an injunction to be modified to begin with. In fact, as mentioned in the brief, and it's in the record, during the hearing on summary judgment before Judge Barbier, Judge Barbier actually mentioned, brought up the topic of would the parties agree to allow coalition to continue using the name if they ceased using the logo. I indicated that that would probably be acceptable. And Ms. Jacobs just flatly ignored it and moved on. But nothing in his order says the order's premise just on the composite mark. I'm sorry? Nothing in the order, the fee-shifting order, draws the separation. Right. So I don't see how, once the merits panel has ruled, they aren't a prevailing party, at least as to the name. And then is your position that that has no consequence for apportionment? Yes, because there are situations where there's a trademark claim, along with non-trademark claims. And sometimes there's apportionment between how much of the case was litigated to address the trademark claims and how much was for the non-trademark claims. But when they're so intertwined that you can't separate them out, then the full amount should be awarded. They cited the treatise, the McCarthy treatise, right, that talks about this. It isn't just non-trademark claims. Once you've got multiple Lanham Act claims, you still have to separate them out. So if the attorney fees has embedded in it time spent on defending the name, I don't see why you'd be entitled to that time. Because the litigation was primarily over the logo. There wasn't really a separation with time spent on just the name. I mean, and Judge Barber. ...centrally, that implies you've made the apportionment in your head. But I don't see that in the district court opinion, and I don't see it in the merits opinion. It seems that both issues were brought in. You won maybe the more salient one, but we're not in the best position to do that, are we? You're not in the best position to do what? Decide what portion of the $68,000 was spent as to the issue they prevailed on. No, that would be for the district court. And I would point to the district court's fee judgment and order. When discussing that the case stands out due to the strength of the alliance's position, litigating position, the court said alliance adopted the senior mark by at least 15 years prior to coalition. The centerpiece of both the alliance mark and coalition mark is a bird of prey. It makes no difference whether the bird is a hawk or an eagle. What is important is that the centerpiece of the two marks is identical to the naked eye. Although the names of the entities on the respective marks are technically different, they're substantially the same so that the substitution of a couple names does little to distinguish the junior mark from the senior. It's clear that the district court was focusing on the logo when writing this opinion and granting the fees. Secondly, the strength of the litigating position between the parties is only one of the two prongs. The district court also found that there was unreasonable litigation tactics on behalf of coalition throughout. And... Of course, that determination with the district court was made before the modification on appeal. That is correct, Your Honor. So it's very difficult for us to make any assessment of anything to do to send it back to the district court and then look at it again. Well, that should be the worst-case scenario today, is that you would vacate and remand. I just believe that... The worst-case scenario would be no attorney's fees. Sorry? I said the worst-case scenario would be no attorney's fees. No, I said the worst-case scenario that I think should happen. I understand. And I believe if you just read Judge Barbier's opinion and look at the record, I don't believe Judge Barbier's would change. You moved to consolidate the two appeals, correct? Yes, I did, Your Honor. But it was a little late and I guess they opposed it and so the merits panel didn't grant that motion. Correct, Your Honor. Well, I have a lot of confidence in Judge Barbier. He'll do what's right and he's on top of this case and it seems to me like he'll have a chance to look at it again since the modification of the appeal. He'll decide what he's gonna decide. It's very difficult for us and where we are to make that kind of judgment. Right, and I would say that it's not for you to make that judgment today. It's whether Judge Barbier made the right decision. And I understand you're saying that Judge Barbier made a decision without all the facts in front of him. And I just say that Judge Barbier did have all the facts in front of him with respect to how this case was litigated beforehand. Well, he made his attorney's fees judgment deciding that your client prevailed on all points. But now that it's modified and now they did prevail, you may call it a small prevailing. Yeah, we're going around a little bit in a circle. Well, yeah, the point about the prevailing party is you just need to be a prevailing party to get fees. The prevailing party for a big part of that does not, there's nothing in the statute that says that you need to apportion anything. But you don't dispute there's quite a bit of law in the treatise that I was pointing to that you do apportion. You can apportion. The only time you don't is when it's inextricable and it's impossible to do. And that's what I am saying that it is inextricable. But you weren't the prevailing party on all the claims. That's the problem. Well, we did prevail on it. I understand you prevailed, but you take the extreme situation, you prevail on very much, ultimately you prevail on only a very small part, but the award is made on a much larger basis. I'm not suggesting that here. When you have that disconnect, then the question is how do you remedy it? Either you ignore it, or we do it, or the district court does it. And we're not going to do it, because we're not really, that's not the level of court to do it. In fairness to all the litigants, it ought to be back to the district judge and make that judgment, who has a familiarity with this that we can't have. Well, I also don't recall seeing anywhere in the appellant's brief any argument to apportion fees. No, she did. I say that categorically, she'll stand up and rebuttal, but I thought right at the end, she said, in the alternative, we want apportionment. I may be wrong, but she'll tell us when she stands up. I usually remember things like that. And I thought I looked very closely to see if I needed to address that argument. She made the larger argument so that she's entitled to the lesser, so to speak. She made the argument that she's going to get an attorney's But I don't see why implicit in that we can't say, well, the basis of that, there has been a change, indeed. But the amount of that, the consequence of that, doesn't belong with us. If any consequence. Yes. That's somewhat to be determined. There is a difference, and the fact is that part of the case on which she prevailed, that matters changed on appeal. And that's the end of it for me. All right, thank you, Mr. C. Jacobs. You've saved time for rebuttal. I'm looking at my brief, and it does say, this court should enter a judgment reversing the award of attorney's fees or in the alternative award coalition attorney's fees for having prevailed on keeping its word mark, which is its name. It's in the brief. That helps. I'm usually that helps. Well, you have a very good memory, I would say. I'm sure much better than mine. I just want to refute some of the arguments that he said. He said about my income was quoted in the Fourth Circuit Court of Appeal opinion about my injuries. That's not true. It was all under seal, and I can prove that. Second of all, they said coalition did not stop using the logo. We never received a cease and desist letter when the other suit was pending. The only thing we got was a lawsuit in 2017. So we thought that the matter was over with since we won in 2008. Then we got hit with this lawsuit. And so we had to come up and, of course, defend it. Thirdly, on settlement, there was never settlement proposed. If you look at the docket sheet, the plaintiff never requested that we go to a magistrate hearing for settlement. Judge Barbier had mentioned something about the eagle and whether or not we would not use the eagle. And I said we have to refer with our members on that. We said he understood. That's in the transcript, which he had before you. And when the United States Fifth Circuit requested that we all enter into a settlement proposal on this case, the plaintiff alliance refused to do so. That's also in the record. Also, with regard to the other argument, the Fifth Circuit obviously found the coalition had a meritorious defense on at least its name because it ruled that we had the right to use it. This is not a big trademark case. But I guess this case could have a lot of ramifications with small nonprofit corporations such as ourselves. We don't have a patent. We're not expending millions of dollars. We haven't got any money to spend. And if the case is remanded back to Judge Barbier and he modifies the order and he gives us an attorney's fee against this, we don't have any money to pay it. And I'm going to say that right up front. I mean, I don't know how we would be able to get, how we would be able to pay a large award of attorney's fees. I mean, we just keep out of existence, which we have been for two years while this case was going, so they win and we lose. So please take that into consideration when you're deciding this case. Before you go, I think I'm right, that if you feel a federal court has issued personal details, you can move that court to redact their decision. I don't know if it was. I didn't know that we could do, I did, we did. I asked Judge Barb, we filed a motion for him to redact that and he denied it. And I don't know why he denied it. Okay. You did move. We did do that. Judge Barbier and I were classmates together. We went to night school together and I can't believe he did that. But he was first and I was second to last in the class. The guy who was last was Wendell Goetje, who started the tobacco litigation. Very interesting case. But Judge Barbier was always a scholar, I can tell you that. And I admired him for that. We both worked for an oil company. They paid for his tuition, but refused to pay for my tuition. It's hard being a woman. Any money I have, I've worked hard for it. Thank you very much. Your case and all of today's cases are under submission.